United States District Court

For the Northern District of California

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   BLICKMAN TURKUS, L.P., dba BT            No. C 05-1091 MJJ
     COMMERCIAL REAL ESTATE,
11                                            **ORDER DENYING DEFENDANTS'**
                                              **SUMMARY JUDGMENT MOTION**
12            Plaintiff

13      v.

14   EGREETINGS NETWORK, INC., et al.,

15            Defendants.
                                          /
16   _____

17

18                          **INTRODUCTION**

19        Before the Court is Egreetings Network, Inc. ("EGN") and American Greetings

20   Corporation's ("AGC") (collectively "Defendants") motion for partial summary judgment

21   ("Motion").  Defendants seek dismissal of the first two causes of action for breach of contract and

22   common count.  For the following reasons, the Court **DENIES** Defendants' Motion.

23                        **FACTUAL BACKGROUND**

24        On or about April 13, 1999, EGN and the owners ("Landlord") of a commercial office

25   building located at 149 Montgomery Street in San Francisco entered into a 10-year commercial lease

26   pertaining to certain portions of the building ("Master Lease").  In October 1999 and March 2000,

27   the Landlord and EGN amended the Master Lease to add more space to the leased premises.  The

28   Master Lease permitted EGN to sublet part or all of the premises with consent of the Landlord.

United States District Court

For the Northern District of California

1    On or about March 19, 2001, EGN and Plaintiff entered into an Exclusive Subleasing

2   Agreement ("Subleasing Agreement"), which granted Plaintiff the exclusive right to procure for

3   EGN subleases for leased premises.  The Subleasing Agreement had an original expiration date of

4   October 1, 2001.

5    In October 2001, the parties entered into an Extension of the Exclusive Subleasing

6   Agreement, which changed the expiration date of the Subleasing Agreement to March 31, 2002.  On

7   or about April 18, 2002, the parties signed a second Extension of the Subleasing Agreement, which

8   moved the expiration date to December 31, 2002.  This extension also amended paragraph 6

9   regarding commissions and the Schedule of Sublease Commissions.  In December 2002, EGN and

10  Plaintiff signed a final Extension of the Subleasing Agreement ("Final Extension"), which changed

11  the expiration date to September 30, 2003.  The Final Extension also amended paragraph 6 regarding

12  commissions and the Schedule of Sublease Commissions.

13   In March 2003, Plaintiff presented and EGN accepted a sublease proposal for Howard S.

14  Wright Construction Company.  On or about July 31 and August 7, 2003, Plaintiff received sublease

15  proposals from two cooperating brokers, but EGN did not enter into either proposed sublease

16  arrangement.  Shortly thereafter, on September 30, 2003, the Subleasing Arrangement expired on its

17  own terms.

18   In the fall of 2003, a lease dispute arose between EGN and the Landlord under the Master

19  Lease.  On or about November 19, 2003, the Landlord's counsel specifically stated in writing that

20  the Landlord had not elected to terminate the Master Lease or EGN's right to possession of the lease

21  premises.  As a result of the ongoing lease dispute, the Landlord filed an action against EGN in San

22  Francisco County Superior Court on December 19, 2003.  During the litigation of that matter,

23  Defendants contend that the Landlord adamantly refused to terminate the Master Lease and would

24  not accept possession of the leased premises unless and until the parties reached a settlement.  Both

25  parties agree that at no time did Defendants receive an abandonment notice regarding the Master

26  Lease and leased premises from the Landlord.  The parties also agree that at no time did Defendants

27  receive a written acceptance of any surrender of the leased premises from the Landlord.  In August

28  2004, EGN and the Landlord settled the lease dispute and the state court action.  As part of the

United States District Court
For the Northern District of California

1    settlement, and for the first time during the life of the Master Lease, the Landlord took possession of

2    the leased premises.

3          On February 10, 2005, Plaintiff filed a complaint for breach of contract, common count, and

4    fraud against Defendants in San Mateo County Superior Court.  On March 16, 2005, Defendants

5    removed the matter to federal court based on diversity jurisdiction.  Defendants now move for partial

6    summary judgment on the first and second causes of action for breach of contract and common

7    count.

8                                            **LEGAL STANDARD**

9          The summary judgment procedure is a method for promptly disposing of actions.  *See* FED.

10    R. CIV. PROC. 56.  The judgment sought will be granted if "there is no genuine issue as to any

11    material fact and [ ] the moving party is entitled to judgment as a matter of law."  FED. R. CIV. PROC.

12    56(c).  "[A] moving party without the ultimate burden of persuasion at trial [ ] may carry its initial

13    burden of production by either of two methods.  The moving party may produce evidence negating

14    an essential element of the nonmoving party's case, or, after suitable discovery, the moving party

15    may show that the nonmoving party does not have enough evidence of an essential element of its

16    claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co.,*

17    *Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the movant meets its burden, the

18    nonmoving party must come forward with specific facts demonstrating a genuine factual issue for

19    trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

20          If the nonmoving party fails to make a showing sufficient to establish the existence of an

21    element essential to that party's case, and on which that party will bear the burden of proof at trial,

22    "the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

23    317, 323 (1986).  In opposing summary judgment, the nonmoving party may not rest on his

24    pleadings.  He "must produce at least some 'significant probative evidence tending to support the

25    complaint.'"  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

26    1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

27          The Court does not make credibility determinations with respect to evidence offered, and is

28    required to draw all inferences in the light most favorable to the non-moving party.  *See T.W. Elec.*,

**United States District Court**

For the Northern District of California

1   809 F.2d at 630-31 (citing *Matsushita*, 475 U.S. at 587 ).  Summary judgment is therefore not

2   appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary

3   facts . . .."  *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

4                                                      **ANALYSIS**

5          The goal of contract interpretation is to give effect to the parties' mutual intent.  Cal. Civ.

6   Code § 1636; *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  "It is the outward

7   expression of the agreement, rather than a party's unexpressed intention, which the court will

8   enforce."  *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1999).  Under California law, the threshold

9   question in interpreting a contract or its provisions is "whether the contested terms are ambiguous."

10  *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993).  Whether a written contract is

11  ambiguous is a question of law to be decided by the court.  *Brobeck, Phleger & Harrison v. Telex*

12  *Corp.*, 602 F.2d 866, 871 (9th Cir. 1979).

13         In assessing whether a contract is ambiguous, the district court "must receive relevant

14  extrinsic evidence that can prove a meaning to which the language of the contract is 'reasonably

15  susceptible.'"  *Id.* (quoting *Pacific Gas and Electric Co. v. G.W. Thomas Drayage Co.*, 69 Cal. 2d

16  33, 37 (1968).  "If the court finds after considering this preliminary evidence that the language of the

17  contract is not reasonably susceptible of interpretation and is unambiguous, extrinsic evidence

18  cannot be received for the purpose of varying the terms of the contract."  *Id.*

19         Summary judgment is proper only if the contract or the provision in question is

20  unambiguous.  *Id.*  If an ambiguity exists, the Court cannot resolve the dispute on summary

21  judgment.  *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  "The

22  rationale for this proposition is simple: ambiguity in a contract raises a question of intent, which is a

23  fact question precluding summary judgment."  *Id.*

24         Here, Plaintiff asserts that Defendants' breached the terms of the Commission Agreement in

25  three separate ways: 1) the Landlord's action of finding and entering into replacement leases for the

26  Subleased Premises directly with third party tenants demonstrates that the Landlord had

27  "recaptured" the subject premises within the meaning of the Commission Agreement; 2) Defendants

28  rejected in advance all potential subleases, thereby effectively taking the property off the market

1 | before the expiration of the listing term; and 3) the Landlord initiated the process of terminating the

2 | lease for the Sublease Premises within 90 days of the expiration of the Commission Agreement.  The

3 | Court will address each issue in turn.

4 | **A.      "Recapture" of the Sublease Premises**

5 | Paragraph 6 of the Subleasing Agreement, as amended, states, in relevant portion, that

6 | "Sublessor agrees to pay Broker a commission . . . (iii) if, during the 90 day period following the

7 | expiration or sooner termination of this Agreement, the Master Landlord initiates the process to

8 | terminate the lease for the Sublease Premises, or subleases from Sublessor or *otherwise recaptures*

9 | *the Sublease Premises*." (emphasis added).

10 | Plaintiff contends that the phrase "otherwise recaptures" was intended as a broad catchall

11 | provision.[1]  Plaintiff asserts that by reaching an understanding with EGN to lease the Sublease

12 | Premises directly to third parties, the Landlord "recaptured" the premises within the meaning of the

13 | Subleasing Agreement.  Plaintiff further asserts that, at worst, the phrase "otherwise recaptures" is

14 | ambiguous.  Defendants respond that in order for the Landlord to have "recaptured" the Sublease

15 | Premises, he must have retaken possession of the property.

16 | Having reviewed the evidence in the record concerning the meaning of the term "recaptures,"

17 | the Court finds that no triable issue of fact exists with respect to the proper interpretation of that

18 | term.  As an initial matter, the Court notes that cases have construed "recapture" to mean the

19 | landlord must retake possession of the property.[2]  *See Three Sixty Five Club v. Shostak*, 104 Cal.

20 | App. 2d 735, 737-38 (1951) ("recapture" of second floor synonomous with possession).  Here, it is

21 | undisputed that the Landlord did not take any action to take away or limit EGN's exclusive

22 | possession of the premises prior to December 29, 2003.  Furthermore, the Court notes that Plaintiff

23 |

24 | [1]To the extent that Plaintiff urges the Court to read "initiates the process" to modify the phrase
25 | "otherwise recaptures," the Court is unpersuaded.  The Court finds it significant that the contract language uses the disjunctive when referring to "initiates the process to terminate the lease for the Sublease Premises, or subleases from Sublessor *or otherwise recaptures* the Sublease Premises."  This
26 | disjunctive language allows the Court to consider whether the Master Landlord: 1) initiates the process to terminate the lease for the Sublease Premises, 2) subleases from Sublessor, or 3) otherwise recaptures
27 | the Sublease Premises.

28 | [2]Because the term "recapture" tends to have a generally accepted meaning, the Court finds that it is not ambiguous on its face.

United States District Court

For the Northern District of California

1  has offered no evidence to support the interpretation it urges -- that the Landlord's ability to sublease

2  directly to tenants somehow equates with recapture of the leased premises.

3      In *National Union*, the court stated that "[the plaintiff cannot rely on the mere possibility of a

4  factual dispute as to intent to avert summary judgment.  Nor can it expect the district court to draw

5  inferences favorable to it when they are wholly unsupported." 701 F.2d at 96.  As in *National*

6  *Union*, Plaintiff has offered no support for its interpretation of "recapture," and hence has failed to

7  create a genuine issue of material fact as to the proper interpretation of the term.

8  **B.      Rejection of All Potential Subleases**

9      Under the terms of the Commission Agreement, EGN granted Plaintiff "the exclusive right to

10  procure for Sublessor a sublease/subleases" during the term of the listing, which was eventually

11  extended to September 30, 2003.  On August 26, 2003, Plaintiff alleges that a representative of EGN

12  informed Plaintiff to stop pursuing any future subleasing deals.  Plaintiff contends that by effectively

13  taking the property "off the market," Defendants violated their promise to consider the sublease

14  proposals presented by Plaintiff.

15      Defendants respond that the express terms of the Subleasing Agreement granted EGN the

16  unconditional right to reject any sublease that Plaintiff proposed and to terminate any negotiations

17  for any proposed sublease.  Paragraph 14 of the Subleasing Agreement states as follows:

18      Nothing contained in this Agreement shall be interpreted as obligating Sublessor
        to accept or enter into a sublease or assignment or to prevent Sublessor from
19      accepting or entering into any sublease or assignment with any prospective
        Subtenant or assignee, whether or not such sublease or assignment is proposed by
20      Broker.  Broker acknowledges that Sublessor shall have the unqualified right, in
        its sole discretion, to terminate the negotiations with any prospective Subtenant or
21      assignee at any time and to refuse to enter into any sublease or with any
        prospective subtenant.

22  Based upon this contract language, Defendants contend that they had every right to refuse to

23  consider sublease proposals offered by Plaintiff.

24      Upon considering the relevant contract language, the Court finds that Defendants had the

25  unqualified right to refuse to enter into sublease proposals offered by Plaintiff.  While Plaintiff urges

26  the Court to make a distinction between "entering into" and "considering" a proposed sublease

27  agreement, the Court is unpersuaded.  The Court finds that the contract language allowing

28  Defendants the right "to refuse to enter into any sublease" is broad enough to allow Defendants to

**United States District Court**
For the Northern District of California

1   refuse to consider any and all sublease agreements proposed by Plaintiff.  Accordingly, the Court

2   finds that the challenged contract language is unambiguous, and concludes that Plaintiff has failed to

3   raise a genuine issue of material fact regarding its "off the market" theory.[3]

4   **C.      Initiates the Process**

5        Paragraph 6 of the Subleasing Agreement, as amended, states, in relevant portion, that

6   "Sublessor agrees to pay Broker a commission . . . (iii) if, during the 90 day period following the

7   expiration or sooner termination of this Agreement, the Master Landlord *initiates the process to*

8   *terminate the lease* for the Sublease Premises . . . ."  (emphasis added).  Plaintiff contends that the

9   Landlord "initiated the process" to terminate or otherwise recapture the premises when it initiated

10  negotiations with EGN following EGN's default under the lease.  Defendants argue that in order to

11  "initiate the process" to terminate the lease, the Landlord must have taken affirmative steps to

12  terminate the Master Lease, such as serving an express termination notice or filing a legal action to

13  terminate.

14       The Court finds that Defendants' reading of "initiates the process" is overly narrow and

15  restrictive.  To be certain, the phrase "initiates the process to terminate the lease" is reasonably

16  susceptible to multiple interpretations.  While the Court agrees with Defendants that the filing an

17  unlawful detainer lawsuit could have "initiated the process to terminate the lease," the Court is not

18  persuaded that such legal action was the only means available to satisfy the contractual language.  It

19  is reasonable to conclude that simple negotiations between the Landlord and EGN regarding lease

20

21

22       [3]Plaintiff also contends that Defendants violated the covenant of good faith and fair dealing by
    rejecting in advance all potential subleases.  Plaintiff asserts that the level of discretion reserved by
23  Defendants in the Subleasing Agreement ultimately deemed the contract illusory.  The Court disagrees.
    It is well settled that where a discretionary right in a contract in unambiguous, a party may not invoke
24  the implied covenant of good faith and fair dealing.  *See Carma Developers, Inc. v. Marathon*
    *Development California, Inc*., 2 Cal. 4th 342, 374 (1992) ("As to acts and conduct authorized by the
25  express provisions of the contract, no covenant of good faith and fair dealing can be implied which
    forbids such acts and conduct.  If parties were given the right to do what they did by the express
26  provisions of the contract there can be no breach.") Furthermore, the Court finds that Defendants'
    provided adequate consideration for the contract, including designating Plaintiff as the exclusive leasing
27  agent for the Sublease Premises.
         Moreover, because the Court finds that no issues of material fact exist regarding the "off the
28  market" theory, the Court need not decide whether Plaintiff has failed to demonstrate contractual
    damages under this theory.

**United States District Court**
For the Northern District of California

1   termination could also satisfy the "initiation" process.[4]  Given that an ambiguity exists in this

2   contract language, the Court cannot resolve this dispute at the summary judgment stage.

3   Accordingly, Defendants' motion for summary judgment on the contract claim is **DENIED**.[5]

4                                                  **CONCLUSION**

5                   For the reasons stated above, the Court **DENIES** Defendants' motion for summary

6   judgment.

7

8           **IT IS SO ORDERED**.

9

10   Dated: September _19_, 2005

                                                MARTIN J. JENKINS
11                                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24         [4]According to Plaintiff, these negotiations included discussions concerning the recovery of the
    Subject Premises and the leasing of the Subject Premises by the Landlord directly to a third party tenant.
25   (Declaration of James Chesler ("Chesler Decl.") at ¶¶ 12 and 13).  However, the Chesler Declaration
    does not explicitly state that the negotiations concerned "the recovery of the Subject Premises."  Rather,
26   the Chesler Declaration states that the negotiations concerned the issue of whether the Landlord could
    lease the EGN property directly to third party tenants.  However, the Court is satisfied that the Chesler
27   Declaration raises an inference that the Landlord "initiated the process" to terminate the lease.

28         [5]Because the factual basis of Plaintiff's common count claim is the same as the contract claim,
    the Court also **DENIES** Defendants' motion for partial summary judgment on the common count claim.

8